# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

THE CINCINNATI INSURANCE      :
COMPANY, et al.,

     Plaintiffs,                 :

vs.                             :       CA 07-0615-WS-C

BELKIN CORPORATION, et al.,      :

     Defendants.              :

## REPORT AND RECOMMENDATION

This case is before the undersigned for the issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on an amended

motion to dismiss crossclaims asserted by the Belkin Corporation

("Belkin") against co-defendant Dongguan Quan Sheng Electric Company

("Dongguan"). (Doc. 52), as amended (Doc. 63). Upon consideration of

the motion, a careful examination of the entire record, and in keeping with

the purposes of judicial economy, the undersigned recommends that

Dongguan's motion be **DENIED** for the following reasons.

## I. BACKGROUND

### A. Factual Background/Procedural History

1. The dispute currently before the undersigned stems from a

September 3, 2005, fire in an antique store allegedly caused by a defective

surge protector manufactured by Dongguan and distributed by Belkin.

(Complaint and Doc. 23, ¶ 6.)  Importantly, Dongguan admits that they manufacture the electrical boards within the surge protectors sold by Belkin.  (Doc. 56, p. 2 and Doc. 43, p. 3.)  Indeed, Dongguan specifically admits to supplying Belkin with the exact device at issue before the undersigned.  (Doc. 63, ¶ 2.)

2.  The disagreement between the two codefendants occurs when Belkin claims that it "conducts business with Dongguan based upon the agreement and understanding... that [they] designate and include Belkin as an additional insured under [their] liability insurance policy." (Doc. 37.) While Dongguan does not dispute that they made an oral representation to that effect, they note in answer to Belkin's charges (of breach of agreement, misrepresentation, and fraud) simply that they are "unaware of any written contract of agreement which would call or otherwise require [Dongguan] to defend, hold harmless, and/or indemnify Belkin from the legal claims asserted against Belkin by the Plaintiff in this litigation."  (Doc. 39, ¶ 2.)

3.  Interestingly, Belkin maintains that it *had* received written proof of their verbal agreement of indemnification from Dongguan, pointing to a certificate of liability insurance allegedly given to Belkin by Dongguan as representation of their inclusion under Dongguan's liability insurance policy as an additional insured.  (Doc. 42, ¶ 15 and Doc. 42, Exhibit A.)  A small box in the bottom-left corner of that insurance certificate, (Doc. 42,

2

Exhibit A) under the title "CERTIFICATE HOLDER," contains the words "BELKIN CORPORATION," but another small box on the certificate indicates that it was issued "as a matter of information only and confers no rights upon the certificate holder," before continuing to point out that the certificate "does not amend, extend, or alter the coverage afforded by the policies below."  (*Id.*)

4.  Because Dongguan now refuses to indemnify Belkin against the claims arising from the September 3rd fire, Belkin brought crossclaims on June 20, 2008, against Dongguan demanding that the latter provide "a defense, indemnity, and reimbursement for all costs and fees" related to the litigation.  (Doc. 42, ¶ 17.)

5.  On August 4, 2008, Dongguan entered a motion to dismiss Belkin's crossclaims, asserting that this court lacks personal jurisdiction over Dongguan, a non-resident corporation headquartered outside of the United States, and as such, constitutes an improper venue for the consideration of those crossclaims.  (Doc. 52, p. 4.)  Dongguan further maintains that it "does not advertise in Alabama, sells no products in Alabama, conducts no activities in Alabama, and in general, maintains no contacts with Alabama.  (*Id.*)

6.  Next, Dongguan claims that this court is the improper venue for Belkin's crossclaims, since the disputed indemnification agreement

supposedly took place in California, despite the situs of the fire and witnesses being here in Alabama. (Doc. 52, ¶ 15.) Incredibly, Dongguan seems to state that although the events giving rise to Cincinnati's claims (the fire) occurred in Alabama, Belkin's claims arise out of a *separate* series of events– a single alleged conversation that happened to take place within the geopolitical borders of the nation's most populous state– and then comes to the conclusion that the next logical step would be to transfer the case to that state, California. All of this, however, flies in the face of a previous order of this court, (Doc. 40) which stated in no uncertain terms that Belkin's crossclaims fit within Rule 13(g)'s parameters and thus arise "out of the transaction or occurrence that is the subject matter of the original action." *(Id.* at 2, Fed.R.Civ.P. 13(g).) It is also noted that Rule 13(g) specifically designates "a claim that the coparty is or may be liable to the cross-claimant for all or part of a [separate] claim" as ancillary to the original action in a given case. *Id.*

7. Finally, Dongguan makes a sparsely-worded alternative motion for the transfer of Belkin's crossclaims to California on the grounds that the two companies entered into a forum selection clause contained in a purchase order. (Doc. 52, ¶ 18; Doc. 63, ¶ 5; Doc. 63, Exhibit A.)[1]

---

[1]  Because these requests are not supported by any specific authority, and because there are a host of reasons to consolidate, rather than split, the proceedings arising from Cincinnati's

8.  Belkin filed a brief in opposition to Dongguan's motion to dismiss that was entered into the record on August 12, 2008.  (Doc. 56.)  In that brief, Belkin explicitly states that they are attempting to show "that Dongguan's rather than Belkin's [sic] actions caused the plaintiffs' damages in this case, if any were attributed to the surge protector at issue." (*Id.* at 2.)  At least from their own perspective, then, Belkin does not view its crossclaims as stemming from a single alleged conversation in California, but instead views the proceedings before the undersigned in a much more holistic, and in the undersigned's opinion, accurate, manner that better comports with judicial economy and the precepts of controlling federal jurisprudence, as the next section will demonstrate.

## II.  DISCUSSION

### A.  This Court's Personal Jurisdiction Over Defendant Dongguan

1.  Dongguan moves to dismiss a crossclaim for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Therefore, Belkin "has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant."  *See The Mitchell Company, Inc. v. Campus*, 2008 WL 183344, *13 (S.D.Ala.) (quoting *Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th

---

original complaint, these requests for transfer should be **DENIED**.

Cir. 2002)).  Also, "[Belkin's] burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction." *Id.* (quoting *Future Technology Today, Inc., v. OSF Healthcare Systems, Inc.*, 218 F.3d 1247, 1249 (11th Cir. 2000)).  Finally, "[a] federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits. . ." *Id.* (quoting *Meier*, 288 F.3d at 1269).

2.  *In personam* jurisdiction in this action, then, is predicated upon Alabama long-arm statute, which provides:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . .

Ala. R. Civ. P. 4.2(b)**.**

3.  In a diversity action such as the present one, "a federal court may assert jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum State, and only if the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment." *Vermeulen v. Renault, U.S.A., Inc.*, 975 F.2d 746, 753 (11th Cir. 1992), *opinion modified and superseded on other grounds by Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534 (11th Cir.

6

1993), *cert. denied sub nom. Regie Nationale des Usines Renault S.A. v. Vermeulen*, 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993); *see also Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992) (panel of the Eleventh Circuit states that in determining whether a district court may assert personal jurisdiction depends upon whether the district court could obtain personal jurisdiction over the defendants pursuant to the applicable state long-arm statute and whether the exercise of personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment), *cert. denied sub nom. South Carolina Property & Casualty Ins. Guar. Ass'n v. Olivier*, 507 U.S. 983, 113 S.Ct. 1577, 123 L.Ed.2d 145, and *cert. denied sub nom. Louisiana Ins. Guar. Ass'n v. Olivier*, 508 U.S. 910, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993).

4.   Where, as here, the courts of the forum state have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) ("Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."); *Ex parte Lagrone*, 839 So.2d 620, 623 (Ala. 2002) ("Rule 4.2, Ala.R.Civ.P., Alabama's long-arm rule, 'extends the personal jurisdiction of Alabama courts to the limits of due process under the federal

and state constitutions.'"); *see also Steel Processors, Inc. V. Sue's Pumps, Inc. Rentals*, 622 So.2d 910, 911 (Ala. 1993); *Sieber v. Campbell*, 810 So.2d 641 (Ala. 2001); and *Duke v. Young*, 496 So.2d 37 (Ala. 1986), state law need not be applied: this Court "need only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process." *Vermeulen*, *supra*, 975 F.2d at 753; *see also Olvier*, *supra*, 979 F.2d at 830 (same) and *Morris v. SSE, Inc.*, 843 F.2d 489, 492 n.3 (11th Cir. 1988) ("This case presents no need to examine Alabama's long-arm jurisdictional statute because that statute authorizes a court to assert personal jurisdiction to the limits of federal due process. . . . We recognize that it is well-established in this circuit that in a diversity case, a federal district court adjudicating a motion to dismiss for lack of personal jurisdiction must determine whether assertion of jurisdiction comports with both state law and the due process requirements of the United States Constitution. . . . However, where the forum's courts interpret the forum's long-arm statute to the limits of *federal* due process, we believe it is not necessary to apply state law; application of the federal *International Shoe* two-part analysis will suffice.").[2]

---

[2] It is also noteworthy that our Alabama courts have straightforwardly stated that a "physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident." *Sieber*, 810 So.2d at 644.

5.  Turning to that seminal case, one can see that a nonresident defendant is amenable to a forum's jurisdiction if "(1) it possesses sufficient minimum contacts with the forum State to satisfy due process requirements, and (2) the forum's exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Vermeulen*, *supra*, 975 F.2d at 754 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), in turn quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).  As stated in *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (citations omitted), "[d]ue process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  *See also Ruiz de Molina*, *supra*, 207 F.3d at 1356 ("The Due Process Clause permits a court to summon a nonresident to defend himself in the forum so long as that person has some minimum contacts with that state and the exercise of personal jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice."); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2L.Ed.2d 223 (1957) (same).

6.  As this court has stated elsewhere, "[j]urisdiction may be either

9

general or specific," with general jurisdiction applying where a defendant's

activities in the forum state are "substantial or continuous and systematic,

regardless of whether those activities gave rise to the lawsuit" and specific

jurisdiction where "a defendant has had few contacts with the forum state,

but those contacts gave rise to the lawsuit." *Campus*, 2008 WL 183344, at

*15 (quoting *Leventhal v. Harrelson*, 723 So.2d 566, 569 (Ala. 1998).  To

aid in this analysis, the Supreme Court has stated that when a cause of

action is related to or arises out of a nonresident defendant's contacts with

the forum, "the relationship among the defendant, the forum, and the

litigation is the essential foundation of *in personam* jurisdiction."

*Helicopteros*, *supra*, 466 U.S. at 414, 104 S.Ct. At 1872 (quoting *Shaffer v.

Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

Moreover, the Eleventh Circuit has stated:

> Specific jurisdiction arises out a party's activities in the forum
> that are related to the cause of action alleged in the complaint.
> It has long been recognized that a court has the minimum
> contacts to support specific jurisdiction only where a
> defendant purposely avails itself of the privilege of
> conducting activities within the forum State, thus invoking the
> benefits and protections of its laws.  The requirement that
> there be minimum contacts is grounded in fairness.  It assures
> that "the defendant's conduct and connection with the forum
> State [is] such that *he should reasonably anticipate being
> haled into court there*.

*Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th

Cir. 2000) (internal citations omitted) (emphasis added), *cert. denied*, 534

U.S. 827, 122 S.Ct. 68, 151 L.Ed.2d 34 (2001).  *See also Dillon Equities v.*

*Palmer & Cay, Inc.*, 501 So.2d 459, 462 (Ala. 1986) (quoting *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d

490 (1980) ("The foreseeability that is critical to due process analysis. . . is

that the defendant's conduct and connection with the forum state are such

that he should reasonably anticipate being haled into court there.").

　　7.  The main thrust of Belkin's argument seems to be that Dongguan

has waived its right to object to personal jurisdiction (Doc. 56, p. 7-8), even

though there is ample evidence that at the time of answering both

Cincinnati's original complaint and Belkin's crossclaim, Dongguan *did*

raise objections to the personal jurisdiction of this court (Doc. 29, "Defense

No. 32" and Doc. 43, p. 2, ¶ 6).  It is true that Dongguan elected not to file a

pre-answer motion to dismiss as to either the claims made by Cincinnati or

the crossclaim made by Belkin, but rather curiously chose to object to

jurisdiction in its responsive pleadings and then to seek dismissal of

Belkin's crossclaim alone– only after Judge Steele authorized the

crossclaim and denied the vaguely-presented first attempt at severance

(Doc. 40).[3]  Here, Dongguan *has* raised objections to the personal

jurisdiction of this court when answering both Cincinnati's original

---

[3] A second motion to sever is under submission (Doc. 46).

complaint and Belkin's crossclaim, but it has not sought an early resolution of the claims raised by Cincinnati on the basis that this court lacks jurisdiction.  (Doc. 29, "Defense No. 32"; Doc. 43, p. 2, ¶ 6.)  A defense of waiver does not stand under this set of circumstances requiring an analysis of the merits of the motion to dismiss.

**The Stream of Commerce Doctrine**

8.   After careful consideration of all the information produced with respect to the argument that this court lacks the personal jurisdiction necessary to hear Belkin's crossclaims, it is decided that this argument fails since this court has specific jurisdiction over Dongguan by application of the "stream of commerce" doctrine.[4]  In this regard, the undersigned turns to the case of *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000), in which the Fifth Circuit stated: "[W]hen a nonresident's contact with the forum state 'stems from a product, sold *or manufactured by the foreign defendant*, which has caused harm *in the forum state*, the court has [specific] jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Id.* (emphasis added), quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.

---

[4] Other alternative theories allowing personal jurisdiction over Dongguan, all of which would dictate the same result if considered in isolation, are discussed later in this section.

1987), in turn quoting *World-Wide Volkswagen*, 444 U.S. at 298, 100 S.Ct. 559).  Interestingly, the court in *Portella v. Life-Time Truck Products, Inc.*, 127 F.Supp.2d 652, 656 (E.D. Pa. 2000) provides an even more expansive view of the "stream of commerce" theory of awarding specific jurisdiction, stating that it "provides for jurisdiction over a nonresident defendant which injected its goods, albeit indirectly, into the forum state and either 'derived a substantial benefit from the forum state or had a reasonable expectation of [doing so].'" *Id.* (quoting *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 300 (3rd Cir. 1985); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 105 S.Ct. 2174, 2182 (1985) (emphasis added) ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [the] fair warning requirement is satisfied if the defendant has purposely directed his activities at residents of the forum... and the litigation results from alleged injuries that arise out of or relate to those activities... *Thus, the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State and those products subsequently injure forum consumers*."); *Ruiz de Molina*, *supra*, 207 F.3d at 1357 ("Direct contact by a nonresident defendant with the forum is not required.  The Supreme Court has held that a nonresident

13

defendant may be subject to specific jurisdiction even if his actions giving rise to the suit occurred outside the forum state... the stream of commerce test for jurisdiction is met if the nonresident's product is purchased by or delivered to a consumer in the forum state, so long as the nonresident's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there for claims arising out of that conduct.").

9.  Going back to the words of the Supreme Court, "the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp.*, *supra*, 444 U.S. at 297-98, 100 S.Ct. At 567.  Addressing the question of how attenuated the entry into the stream of commerce must be, (or whether Dongguan's role as the manufacturer of the electrical boards for the surge protectors it then sells to Belkin subjects it to this court's jurisdiction under the stream of commerce theory) the Eleventh Circuit noted that the Supreme Court case of *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 107 S.Ct. 1026 (1987) concerned an "indemnification action brought... by Cheng Shin, a Taiwanese tire manufacturer, against Asahi, the Japanese tire valve manufacturer that had

14

sold an allegedly defective component part to Cheng Shin." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1547 (11th Cir. 1983), *cert. denied sub nom. Regie Nationale des Usines Renault S.A. v. Vermeulen*, 508 U.S. 907 (1993).  Furthermore, the court stated, "[t]he record in that case revealed that Asahi was aware that its tire valves were incorporated into tires that were sold in California," much like Dongguan was admittedly aware that their circuit boards were incorporated into Belkin's surge protectors, which are sold all across America.  *Id.*  The *Vermeulen* court then handily summarized the plurality decision of *Asahi*:

> In a plurality opinion authored by Justice O'Connor, four justices concluded that Asahi did not possess sufficient minimum contacts with California to permit California's exercise of jurisdiction under the Due Process Clause.  The plurality determined that minimum contacts did not exist where "the defendant acted by placing a product in the stream of commerce, and the stream eventually swept defendant's product into the forum state, but the defendant did nothing else to purposely avail itself of the market in the forum State."

> > The placement of a product into the stream of commerce, without more, is not an act of the defendant purposely directed toward the forum State.  Additional conduct of the defendant may indicate an intent to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

The plurality concluded that because Asahi (1) did not do business in California, (2) had no office, agents, employees, or property in California, (3) did not advertise or otherwise solicit business in California, and (4) did not create, control, or employ the distribution system that brought its valves to California, it did not possess minimum contacts with California.

The plurality also concluded that California's exercise of jurisdiction over Asahi in this case did not comport with "traditional notions of fair play and substantial justice," and that therefore, regardless of whether Asahi possessed minimum contacts with California, the State's exercise of jurisdiction over Asahi violated due process.

Justice Brennan, although concurring in the plurality's holding that California's exercise of jurisdiction did not comport with "traditional notions of fair play and substantial justice" and therefore violated due process, did not join the plurality's holding that Asahi did not possess minimum contacts with California.  Quoting liberally from *World-Wide Volkswagen*, Justice Brennan emphasized that the "additional conduct" showing required by the plurality was unnecessary, insofar as "[t]he stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale."  Justice Brennan maintained that:

> [A]s long as a participant in [this flow of products] is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.  Nor will the litigation present a burden for which there is no corresponding benefit.  A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State and indirectly benefits from the State's laws that regulate and facilitate commercial activity.

Finally, Justice Stevens, although concurring in the judgment,

> also declined to join the plurality's holding regarding
> minimum contacts, believing the discussion was unnecessary
> given the plurality's decision regarding the "fair play and
> substantial justice" prong of the due process analysis.  Justice
> Stevens noted, however, that an analysis of purposeful
> availment and minimum contacts should take into account
> "the volume, the value, and the hazardous character of the
> components," suggesting that a "regular course of dealing that
> results in deliveries of over 100,000 units annually over a
> period of several years would constitute 'purposeful
> availment' even though the item delivered to the forum State
> was a standard product marketed throughout the world."

*Id*. at 1547-48 (internal citations omitted).  The *Vermeulen* panel ultimately determined that it did not have to decide which *Asahi* standard was controlling, finding jurisdiction in the United States "consistent with due process under the more stringent 'stream of commerce plus' analysis adopted by the *Asahi* plurality" and obviating any need to employ the less demanding Brennan standard from *World-Wide Volkswagen*.  *Id*. at 1548.

10.  In light of the decision in *Vermeulen*, this court must first decide whether it may exercise personal jurisdiction over Dongguan consistent with due process under the stream of commerce plus analysis suggested by the *Asahi* plurality, and failing that, whether Justice Brennan's view, combined with the still-valid second prong of the analysis in *International Shoe*, confers jurisdiction over Dongguan in the Southern District of Alabama.  In the case before the undersigned, it is readily apparent that the surge protectors manufactured by Dongguan, including the one that

allegedly caused the fire at the antique shop insured by Cincinnati, have been placed by Dongguan in the stream of commerce in the United States and have foreseeably found their way into Alabama.  The case of *Cf. Andersen v. Sportmart, Inc.*, 57 F.Supp.2d 651 (N.D.Ind. 1999) is informative in making the determination of whether Dongguan's actions subject it to personal jurisdiction here in Alabama.  There, the court said: "[I]t is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products." *Id*. at 660.  Certainly, Dongguan must have realized prior to the current litigation that since it sells surge protectors to Belkin and Belkin distributes these surge protectors all across America, it could be haled into court in any state where a local injury occurred.  It does not respect the traditional judicial conception of jurisdictional awards to think that a company (Dongguan) that tacitly admits making an oral promise to indemnify another (Belkin) and even gave them an insurance certificate ostensibly to that effect did not foresee the possibility that it could be haled into court wherever that second corporation sells the products it supplies them.

**Considerations of Fair Play and Substantial Justice**

11.  Even if one believes that Dongguan's entry of the surge

18

protectors was at too remote a tributary to the stream of commerce that

subjects a nonresident corporation to personal jurisdiction in Alabama, one

would still be premature to pronounce that Dongguan was not amenable to

jurisdiction here.  The Eleventh Circuit has indicated that even though a

defendant lacks sufficient minimum contacts with the forum to support a

district court's jurisdiction over it, a court may nonetheless exercise

personal jurisdiction over such defendant if "considerations of fair play and

substantial justice counsel permitting the exercise of personal jurisdiction."

*Sun Bank, N.A. v. E.F. Hutton & Co., Inc.*, 926 F.2d 1030, 1034 (11th Cir.

1991) (citation omitted); *see Rudzewicz*, *supra*, 471 U.S. at 477, 105 S.Ct.

At 2184 ("These considerations [of fair play and substantial justice]

sometimes serve to establish the reasonableness of jurisdiction upon a lesser

showing of minimum contacts than otherwise would be required."); *Ruiz de*

*Molina*, *supra*, 207 F.3d at 1358-59 ("[B]ecause these considerations serve

to establish the reasonableness of jurisdiction in this case, a lesser showing

of minimum contacts than otherwise would be required is sufficient.").

12.  In deciding exactly how much the aforementioned judicial

concerns should influence a decision to exercise personal jurisdiction over

nonresident defendants, we turn again to *Meier*.  "In determining whether

jurisdiction would comport with traditional notions of fair play and

substantial justice, the courts look at (a) the burden on the defendant, (b) the

19

forum state's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering substantive social policies." *Meier*, *supra*, 288 F.3d at 1276 (citation omitted).

**a. The burden on the defendant**

13.  Turning to the first of these considerations, it is clear to the court that even if this corporate defendant were not before the court defending plaintiff Cincinnati's original claims, Dongguan would still not be greatly inconvenienced by having to come to Alabama to appear in court given the availability of modern transportation and communication. *See Olivier*, *supra*, 979 F.2d at 834 ("[A]s the Supreme Court of the United States has noted, 'modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity'. . . [the Court] subsequently stated that the historical developments noted in *McGee* have only accelerated in the generation since that case was decided [so] [r]equiring adjudication in Alabama will not impose a substantial burden...") (citing *McGee*, *supra*, 355 U.S. at 222-223); *Morris*, *supra*, 843 F.2d at 495 (same).

14.  While it is true, as *Asahi* relates, that the "unique burdens placed upon one who must defend oneself in a foreign legal system should have

significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders," the same opinion continues *in the very next sentence* to state that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, *supra*, 480 U.S. at 114, 107 S.Ct. At 1033.

15.  Because Dongguan has not sought dismissal of  Cincinnati's original claims for want of personal jurisdiction but has appeared in this court to answer (Doc. 29) that initial complaint, to move for protective orders (Docs. 33 & 49), to respond (Doc. 39) to Belkin's motion for leave to assert its crossclaim, to answer (Doc. 43), sever (Doc. 46), and dismiss (Doc. 52) Belkin's crossclaim, to respond (Doc. 55) to Belkin's objection to a protective order, to amend (Doc. 63) its motion to dismiss Belkin's crossclaim, and finally to stay discovery (Doc. 67), the undersigned finds that Dongguan's contention that this court lacks personal jurisdiction is simply not compelling.

16.  Because this court has personal jurisdiction over Dongguan with respect to Cincinnati's original claim, it also has jurisdiction over Dongguan with respect to Belkin's Rule 13(g)-verified crossclaim.  *See* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1433 (2008) ("Since Rule 13(g) specifically provides that cross-claims may

be asserted only against coparties, there typically can be no objection to the court's jurisdiction over the person of the cross-claim defendant; he already is before the court for purposes of defending against the main claim.").  It seems that other courts have given summary treatment to this issue, as past jurisprudence (when even bothering to explicitly mention the link between crossclaims and original actions) spends very little time on its explication. In *Bank of Neosho v. Concord*, 8 F.R.D. 621, 624 (W.D.Mo. 1949), the court stated that the "one form of action system, such as contemplated by the Federal Rules of Civil Procedure, makes clear that all controversies of all parties to an action, particularly where they arise out of the same transaction or occurrence, should be disposed of and adjudicated in a single proceeding."  Although from an Illinois appellate court, the decision of *Norman v. Kal*, 88 Ill.App.3d 81 (1980) is also of help here.  There, the court said: "Typically of course, obtaining [personal] jurisdiction on a crossclaim is no problem when the crossclaim defendant shows up to defend the principal suit [as] his presence removes any objections to jurisdiction on the crossclaim."  *Id.* at 85.

**b. Alabama's interest in adjudicating the dispute**

16.  As the Eleventh Circuit noted in *Vermeulen*, the United States "has a compelling interest in protecting persons within its borders from unsafe products that find their way into the country."  *Vermeulen*, *supra*,

985 F.2d at 1551.  The Eleventh Circuit has elsewhere referred to Alabama specifically when employing this logic, saying: "Alabama has an interest in seeing that persons using products purposefully sent into the state are not seriously injured because of a product defect."  *Morris*, *supra*, 843 F.2d at 495.  *See also Anderson*, *supra*, 57 F.Supp.2d at 622 ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.").

**c.  Belkin's interest in obtaining convenient and effective relief**

17.  Belkin has an obvious interest in having its crossclaims heard in the same court in which it is appearing as a defendant.  The court would especially like to remind Dongguan here of this court's finding (Doc. 40) that Belkin's crossclaims survive the Rule 13(g) threshold, and therefore arise out of the same transaction or occurrence that is the subject of the original complaint in the suit at bar.  The prospect of splitting the proceedings to a court in California that is as of yet unaware of the particulars of this case and would have little access to the situs of the alleged product malfunction or to its witnesses does not enthrall the undersigned.

**d.  Efficient resolution of controversies**

18.  In *Morris*, the Eleventh Circuit explained that proper venue for a case lies "where the alleged accident occurred, diversity jurisdiction exists,

and a majority of witnesses reside." *Morris*, *supra*, 843 F.2d at 495 (internal citations omitted); *see also Andersen*, *supra*, 57 F.Supp.2d at 663 ("In evaluating [the efficient administration of justice] factor, courts generally consider where witnesses and evidence are likely to be located.". In the case before the undersigned, the alleged accident happened in the City of Mobile and *all* of the witnesses relating to that accident reside in Alabama, factors which counsel in favor of jurisdiction in Alabama.

**e.  Social policies furthered by a finding of jurisdiction**

19.  As noted before, Alabama has significant interests, both peculiar to its borders and as part of our nation, that are implicated in the undersigned's decision as to whether to allow jurisdiction over Dongguan in this court.  Again, however, it is enough to say that the fundamental tenets of judicial economy, along with Alabama's incontrovertible interest in protecting its citizens against the negligent actions of foreign actors, counsel no other result than keeping Belkin's crossclaims against Dongguan right here in Mobile.

20.  After reflection on the preceding showing of fundamental social policies that will be furthered by allowing this case to proceed in Alabama, the court finds that the balance of the interests contemplated by the Eleventh Circuit in *Meier*, *supra*, dictates the exercise of jurisdiction in this case.

**B.  Pendent Personal Jurisdiction over Dongguan**

1.  An alternative theory of personal jurisdiction whose invocation would also result in a finding of this court's personal jurisdiction over defendant Dongguan is referred to in other circuits as "pendent personal jurisdiction."  As the court stated in *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004), "[m]any of our sister circuits have adopted the doctrine of pendent personal jurisdiction," which grants a court the ability to exercise personal jurisdiction over a defendant "with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction."  *Id*. at 1180, citing *United States v. Botefuhr*, 309 F.3d 1263, 1272-75 (10th Cir. 2002); *Robinson Eng'g Co., Ltd. Pension Plant Trust v. George*, 223 F.3d 445, 449-50 (7th Cir. 2000); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 628-29 (4th Cir. 1997); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2nd Cir. 1993); *Oetiker v. Werke*, 556 F.2d 1, 5 (D.C. Cir. 1977); and *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555-56 (3rd Cir. 1973).

2.  As is stated above, this court has already determined that Belkin's crossclaims against Dongguan arise from the same set of facts as the claims contained in Cincinnati's original complaint, marking the situation before

the undersigned as perfectly akin to that envisioned by the pendent personal

jurisdiction doctrine.  "Pendent personal jurisdiction is typically found

where one or more federal claims for which there is nationwide personal

jurisdiction are combined in the same suit with one or more state or federal

claims for which there is not nationwide personal jurisdiction."  *Atlantic*

*Embroidery*, 368 F.3d at 1180.  Lest one get confused over the "nationwide

personal jurisdiction" requirement, the court in *Rolls-Royce Corporation v.*

*Heros, Inc.*, 2008 WL 783549 (N.D.Tex.) spells out the operation of the

doctrine with perhaps a bit more clarity.  There the court said:

> Pendent, personal jurisdiction, like its better known [sic]
> cousin, supplemental subject matter jurisdiction, exists when
> a court possesses personal jurisdiction over a defendant for
> one claim, lacks an independent basis for personal jurisdiction
> over the defendant for another claim that arises out of the
> same nucleus of operative fact, then, because it possess
> personal jurisdiction over the first claim, asserts personal
> jurisdiction over the second claim.

*Id*. at *14, citing *Botefuhr*, 309 F.3d at 1272-73.

3.  Following the logic of the *Atlantic Embroidery* court once again,

the undersigned agrees that "[w]hen a defendant must appear in a forum to

defend against one claim, it is often reasonable to compel that defendant to

answer other claims in the same suit arising out of a common nucleus of

operative facts."  *Atlantic Embroidery*, 368 F.3d at 1181.  Additionally,

"judicial economy, avoidance of piecemeal litigation, and overall

convenience of the parties" are best served by employing this doctrine. *Id*. Finally, as the Tenth Circuit has stated, "every circuit court to decide the issue has approved pendent personal jurisdiction," which certainly speaks to the doctrine's appeal among this country's learned jurists. *Botefuhr*, 309 F.3d at 1273.

## III. CONCLUSION

The undersigned concludes that exercising personal jurisdiction over nonresident defendant Dongguan with regard to Belkin's crossclaims would be reasonable and consistent with the notions of fair play and substantial justice, even if Dongguan's entry (of the surge protectors it supplies to Belkin) into the stream of commerce would not otherwise give rise to a sufficient finding of minimum contacts. Finally, the alternative doctrine of pendent personal jurisdiction, grounded on the familiar principals of convenience to the parties and judicial economy, counsels no other result but that Dongguan must answer Belkin's crossclaims in this court. For all the reasons stated herein, it is recommended that Dongguan's motion to dismiss, or in the alternative that this action be transferred to California, be **DENIED**.

DONE this the 3rd day of October, 2008.

 s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.    *Objection*.  Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

28

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.


                              s/WILLIAM E. CASSADY
                              UNITED STATES MAGISTRATE JUDGE