IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION 07-0615-WS-C |
| BELKIN CORPORATION, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the Court on defendant Dongguan Quan Sheng Electric Company, Ltd.'s Motion to Dismiss Belkin Corporation's Cross-Claims (doc. 52) and its Amended Motion to Dismiss/Transfer (doc. 63). On October 3, 2008, Magistrate Judge Cassady entered a Report and Recommendation (doc. 74) in which he determined that Dongguan's requests to dismiss or transfer Belkin's Crossclaims should be denied. Dongguan has now filed a 6-page Statement of Objection (doc. 79) and a 20-page Memorandum of Law (doc. 80) setting forth its objections to the Report and Recommendation. Also pending is Dongguan's Motion to Sever Belkin's Cross-Claims (doc. 46).

**I.      Relevant Background.**

On August 30, 2007, plaintiffs Cincinnati Insurance Company and Kenneth E. Henderson, Jr., filed the Complaint (doc. 1) against defendants Belkin Corporation and Dongguan Quan Sheng Electric Company, Ltd. The Complaint asserts various state-law claims (including claims for negligence, wantonness, products liability, and breach of express/implied warranty) against defendants arising from a September 3, 2005 fire at Martha Jane's Antique Shop in Mobile, Alabama. The damaged premises were allegedly owned by plaintiff Henderson and insured by plaintiff Cincinnati. Plaintiffs maintain that the cause of the blaze was a defective electrical surge protector that was manufactured by defendant Dongguan and distributed by defendant Belkin.

On June 20, 2008, with leave of court, defendant Belkin filed a Crossclaim (doc. 42) against defendant Dongguan, interposing claims of declaratory judgment, breach of agreement, misrepresentation and fraud.  Belkin alleged that it "conducts business with Dongguan based upon the agreement and understanding that Dongguan designate and include Belkin as an additional insured under Dongguan's liability insurance policy," that "Dongguan represented to Belkin that Belkin was an additional insured under Dongguan's insurance policy" for the relevant time period, that "Belkin reasonably relied upon Dongguan's representations that it was covered as an additional insured under Dongguan's liability insurance policy," and that Dongguan has refused to defend and indemnify Belkin from the claims brought herein by Cincinnati and Henderson.  (Doc. 42, ¶¶ 15-17.)  Among other relief, Belkin specifically seeks a declaration that Belkin is entitled to a defense, indemnity and reimbursement by Dongguan in connection with the Cincinnati/Henderson claims.

Dongguan has aggressively sought to derail Belkin's Crossclaim at the earliest opportunity.  After unsuccessfully attempting to prevent Belkin from filing its Crossclaims at all, Dongguan has offered motions seeking the dismissal, transfer or severance of Belkin's claims against it.  The first two forms of requested relief were addressed by the Magistrate Judge via a Report and Recommendation as to which Dongguan has lodged extensive objections.  The third comes before the undersigned as a matter of initial impression.  All three requests by Dongguan with respect to the Crossclaims are now ripe for adjudication.

## II.     Dongguan's Objections to the Report and Recommendation.[1]

### A.     *Objection Concerning Finding that Claims Arise from Same Series of Events.*

Dongguan devotes several pages of its brief in support of its Objections to debating the Magistrate Judge's conclusion that Belkin's Crossclaims against Dongguan arise from the same series of events as plaintiffs' claims against Belkin and Dongguan.  Remarkably, Dongguan

---

[1]     In reviewing the Report and Recommendation, the Court recognizes its statutory obligation to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  That said, the Court also hews to the principle that "[n]either the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct."  *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (citation omitted).

insinuates that Magistrate Judge Cassady was mistaken in asserting that this Court has already addressed this issue.[2]  But this Court has expressly plowed this ground via Order (doc. 40) entered on June 19, 2008, which stated, in pertinent part, as follows:

> "On its face, Rule 13(g), Fed.R.Civ.P., would allow the Crossclaim notwithstanding its inclusion of new issues not otherwise joined in these proceedings.  In particular, Rule 13(g) authorizes crossclaims 'if the claim arises out of the transaction or occurrence that is the subject matter of the original action,' including 'a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.' *Id.*  Belkin's proposed Crossclaim plainly satisfies the Rule 13(g) threshold ...."

(Doc. 40, at 3.)  It was not error for the Magistrate Judge to adhere to this Court's prior holding in this very litigation that Belkin's Crossclaims arise out of the transaction or occurrence that is the subject matter of the original action.  Dongguan's complete disregard of the June 19 Order in its Objections to the Report and Recommendation is difficult to fathom.

In any event, the Court now reaffirms the June 19 Order.  The situation is this: Plaintiffs are suing Belkin and Dongguan to recover damages for a fire that they claim was caused by a surge protector that Dongguan manufactured and Belkin distributed.  Belkin says that Dongguan is obligated to defend and indemnify it against plaintiffs' claims because of certain representations and promises that Dongguan made.  Thus, Belkin is asking Dongguan, *inter alia*, to shoulder any liability that may be imposed on Belkin by virtue of plaintiffs' claims.  As such, Belkin's claims against Dongguan manifestly arise from the same transactions or occurrences as plaintiffs' claims against Belkin and Dongguan, inasmuch as plaintiffs seek to have Belkin and Dongguan pay for the fire loss and Belkin seeks to have Dongguan pay any portion of that fire loss that may otherwise be allocated to Belkin.  Stated differently, if Belkin is held liable to Cincinnati and Henderson herein, then Belkin wants that liability to pass to Dongguan pursuant to the Crossclaims.  Clearly, the Cincinnati/Henderson claims and the Crossclaims are

---

[2] The offending statement by Dongguan is as follows: "Though Judge Cassady, in referencing 'Document 40' claims that 'Belkin's crossclaims fit within Rule 13(g)'s parameters', this Court has yet to rule on Dongguan's Motion to Sever."  (Doc. 80, at 8.)  That document 40 is this Court's Order dated June 19, 2008, which contains precisely the finding that Magistrate Judge Cassady attributes to it.  Yet Dongguan's Objections fail even to acknowledge that Order.

intertwined and arise from a common, overlapping set of factual circumstances and events.  It was not error for Magistrate Judge Cassady to so conclude.  Indeed, in the undersigned's experience, it is not uncommon for issues of liability and indemnity to be joined in the same legal proceedings, rather than multiplying the proceedings (as Dongguan seeks to do here) by splintering related claims into discrete parcels and scattering them among farflung jurisdictions to press some perceived strategic advantage, at the expense of efficiency, convenience and common sense.

### B. *Objection to Personal Jurisdiction Determinations.*

In addressing the personal jurisdiction issues at the heart of Dongguan's Motion to Dismiss, the Magistrate Judge concluded that "this court has specific jurisdiction over Dongguan by application of the stream of commerce doctrine." (Doc. 74, at 12.)[3]  In the alternative, he explained, even if there is a lesser showing of minimum contacts than would be otherwise required, the exercise of personal jurisdiction over Dongguan is proper in this case because considerations of fair play and substantial justice establish the reasonableness of jurisdiction in this forum.  (*Id.* at 18-24.)  Even assuming that jurisdiction would be unwarranted under that approach, the Magistrate Judge further opined that personal jurisdiction would be properly exercised over Dongguan pursuant to the doctrine of pendent personal jurisdiction given Dongguan's failure to litigate personal jurisdiction as to the Cincinnati/Henderson claims.  (*Id.* at 25-27.)  After careful review of the Magistrate Judge's recommendations on the personal jurisdiction issue and Dongguan's objections to same, the Court **overrules** the objections and **adopts** the reasoning set forth in the Report and Recommendation for the exercise of personal jurisdiction over this defendant in this forum.[4]

---

[3] "The stream of commerce test for jurisdiction is met if the nonresident's product is purchased by or delivered to a consumer in the forum state, so long as the nonresident's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there for claims arising out of that conduct." *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp.2d 1056, 1064 (S.D. Ala. 2007) (quoting *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1357 (11th Cir. 2000)) (recognizing "stream of commerce" doctrine as a means of exercising specific personal jurisdiction over a nonresident defendant).

[4] No constructive purpose would be served by reproducing the Magistrate Judge's analysis here; nonetheless, several observations concerning Dongguan's personal jurisdiction

### C.     *Objections Concerning Forum Selection Clause.*

In its Objections, Dongguan maligns the Report and Recommendation for purportedly devoting insufficient attention to the forum selection clause set forth in Belkin's purchase orders, wherein the parties allegedly agreed that any claims or actions between them would be brought in Los Angeles County, California.[5]  In particular, Dongguan bluntly states as an underlined

---

objections warrant brief treatment.  It is not insignificant that Dongguan, by its own admission, "has not actively contested the jurisdiction" of this District Court over it as to the claims asserted by Cincinnati and Henderson.  (Doc. 80, at 12.)  To recap, those claims allege that a defective surge protector manufactured by Dongguan damaged a building in Alabama.  While it at least tacitly concedes that the exercise of personal jurisdiction over it in Alabama is proper as to the Cincinnati/Henderson claims, Dongguan insists that no such jurisdiction exists as to the Crossclaims because those Crossclaims "do not concern the Cincinnati Claims." (*Id.*)  Thus, Dongguan's position is that the Crossclaims are totally unrelated to the primary claims brought by Cincinnati/Henderson, such that those Crossclaims have nothing to do with this forum.  The Court disagrees, and specifically reiterates its finding that both the principal claims and the Crossclaims arise from the same series of transactions.  They are not "completely different," as Dongguan would have the Court conclude.  (*Id.* at 17.)  If the Cincinnati/Henderson claims are about a fire in Alabama, then the Crossclaims are primarily about the allocation of responsibility between Dongguan and Belkin for defending against and paying for any damages imposed because of that fire.  Contrary to Dongguan's stance, Alabama has a strong interest in the outcome of those Crossclaims, which join the issue of who is responsible for remedying an Alabama injury.  Dongguan's objections on this point are simply not tenable.  Nor is it credible for Dongguan to suggest, as it does, that defending the Crossclaims in Alabama would impose a substantial incremental burden on Dongguan, as compared to defending those claims in California, the forum to which Dongguan urges this Court to transfer the Crossclaims. Dongguan asserts, "Sending [its] employees to California [from China to defend against the Crossclaims] is one thing.  Sending them to Alabama is another." (*Id.* at 14.)  The distinction urged by Dongguan is unprincipled, conclusory and unpersuasive.  Besides, if Dongguan is sending employees to Alabama anyway to defend against the Cincinnati/Henderson claims, then the incremental burden of sending them to Alabama to defend against the Crossclaims in this same lawsuit appears negligible.  Finally, Dongguan's position that the Crossclaims could be most efficiently resolved by sending them to California, thereby rending this case into two pieces being litigated by Belkin and Dongguan on opposite sides of the country simultaneously, borders on absurdity.  The goal of efficiency cannot rationally be promoted by proliferating a properly unified litigation into two different legal actions, both involving allocation of liability for the same loss between the same defendants, playing out concurrently in courthouses 2,000 miles away from each other.

[5]      In particular, paragraph 13 of the Belkin Purchase Order form reads as follows: "GOVERNING LAW.  Each order shall be governed by and construed in accordance with the

heading as follows: "Magistrate [Judge] William E. Cassady has basically ignored the import of the Belkin PO Forum Clause." (Doc. 80, at 17.) Dongguan goes on to state that the Report and Recommendation affords the forum selection clause "far too little weight ... and that it should be enforced." (*Id.*) Dongguan argues that the certainty and convenience provided by a forum selection clause "is an indispensable element in international trade that Magistrate [Judge] William E. Cassady has elected to ignore." (*Id.* at 18.) In support of its position, Dongguan string-cites more than a half dozen cases pertaining to the effects, import, and application of forum selection clauses. (*Id.*) Dongguan also argues, with citations to authority, that the forum selection clause is "an indication that Dongguan did not avail itself of the benefits and protections of Alabama law" but instead availed itself solely of California law for personal jurisdiction purposes. (*Id.* at 6-7.)

Upon *de novo* review of the Report and Recommendation as to this issue, the Court finds no error. Significantly, Dongguan's initial Motion to Dismiss (doc. 52) and incorporated memorandum of law were silent as to Belkin's forum selection clause, and requested neither enforcement of that provision nor transfer of the Crossclaims to California. Three weeks later, after briefing on the Motion to Dismiss had closed and the issue had been taken under submission, Dongguan, for the first time and without leave of court, abruptly filed a pleading styled "Amended Motion to Dismiss/Transfer" (doc. 63). This threadbare, three-page filing quoted the forum selection clause and stated in conclusory terms (with no elaboration, explanation or citation to any legal authority whatsoever) that "[b]ased on the terms and conditions of the Belkin Purchase Order(s)," Belkin had "waived the right to object to the dismissal of its claims and/or to the transfer of its claims to a court of competent jurisdiction in Los Angeles County, California." (Doc. 63, ¶ 3.)

As an initial matter, the "Amended Motion" was improperly filed because Dongguan did not request leave of court before belatedly retooling its Motion to Dismiss (which had already been briefed and taken under submission) by injecting a brand-new basis for relief (*e.g.*, the

---

laws of the State of California. Any claim or action between the parties shall be filed and tried only by a court of competent jurisdiction sitting in the County of Los Angeles, State of California. The parties hereby submit to the jurisdiction of such courts and waive any objection on the grounds of inconvenient forum." (Doc. 63, Exh. A, ¶ 13.)

forum selection clause).  Even if that procedural defect is overlooked, the Amended Motion plainly contravenes Local Rule 7.1(a), which provides that "[a]ny motion filed pursuant to Rule 12(b) ... of the Federal Rules of Civil Procedure must be supported by a brief.  Failure to file a brief may result in the denial of the motion."  *Id.*  Yet Dongguan opted neither to file a brief nor even to develop its new skeletal argument regarding the forum selection clause via citations to authority or elaboration of its reasoning, instead offering a scant, one-sentence statement that the clause constitutes a waiver of Belkin's objections to the dismissal or transfer of the Crossclaims. Dongguan now lambasts Magistrate Judge Cassady for failing to make its arguments, perform its research and explain its position for it.  Clearly, he was not required to do so.  *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (explaining that there is "no burden upon the district court to distill every potential argument that could be made based upon the materials before it").[6]  Moreover, the argument developed in Dongguan's Objections "that the subject Belkin PO forum selection clause be considered prima facie valid and that it should be enforced" (doc. 80, at 17) was never even presented to Magistrate Judge Cassady. However, that does not stop Dongguan from sharply (and unfairly) criticizing the Report and Recommendation for "elect[ing] to ignore" this unspoken argument that Dongguan unveils for the first time in its Objections.  The Magistrate Judge cannot be faulted for failing to read Dongguan's mind.[7]

---

[6] *See also Phillips v. Hillcrest Medical Center*, 244 F.3d 790, 800 (10th Cir. 2001) (refusing to consider a point on appeal because appellants failed to support their position with relevant authority and also noting the court will not perform the party's research for him); *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him."); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) ("The premise of our adversarial system is that [federal] courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.").

[7] The same reasoning defeats Dongguan's objection that the forum selection clause should be viewed as evidence that it availed itself of California law, not Alabama law, for purposes of the personal jurisdiction analysis.  Having failed to present this argument to Magistrate Judge Cassady in the first instance, Dongguan cannot now be heard to object to the Report and Recommendation for failing adequately to address that contention.

For all of these reasons, upon *de novo* review the Court finds no error in Magistrate Judge Cassady's recommendation that this action not be dismissed or transferred, the forum selection clause notwithstanding. Dongguan's objections to the Report and Recommendation relating to that forum selection clause are therefore **overruled**.[8]

### III. Dongguan's Motion to Sever Crossclaims.

In a separate motion (by this Court's count, the third substantive motion these parties have litigated concerning Belkin's Crossclaims), Dongguan requests "that the subject matter of that Cross-Claim be severed from the balance of the claims made the basis of this litigation." (Doc. 46, at 2.) The crux of Dongguan's Motion to Sever is that the Crossclaims would necessarily expose the jury to facts concerning Dongguan's liability insurance coverage, which

---

[8] Additionally, Dongguan's opportunistic invocation of the Belkin forum selection clause as mandating a California forum in these proceedings is inconsistent with its own corporate representative's sworn denial of the existence of any agreements between Belkin and Dongguan. In its Objections, Dongguan has provided the Court with the deposition testimony of its corporate representative, Lan Ping Miaw, that "there is no direct agreement between Dongguan and Belkin." (Miaw Dep., at 19.) Miaw testified that the purchase orders in question were not even entered into between Belkin and Dongguan, but instead are between Belkin and a third party company. Her testimony on this point was as follows: "It's either Rosedene or Powertech, they will get purchase orders from Belkin, and then they will subcontract the purchase orders to us, and, therefore, we do not have any direct agreement with Belkin." (*Id.* at 19-20.) So in one breath Dongguan insists that the purchase orders reflect an agreement between Belkin and Dongguan to an exclusive forum in California for all disputes between them. In the next, Dongguan cites its corporate representative's unequivocal denial that the purchase orders are sent by Belkin to Dongguan or that any agreements exist between Belkin and Dongguan. Dongguan simply ignores this glaring inconsistency, and makes no attempt to reconcile these two positions. The net result is that Dongguan is asking this Court to enforce a forum selection clause to the detriment of Belkin even as it denies having been a party to the purchase order to which that provision was appended. Enforcement against Belkin of a clause set forth in a purchase order to which Dongguan was neither a party nor an intended beneficiary would be inconsistent with general contract principles. *See Ocwen Orlando Holdings Corp. v. Harvard Property Trust, LLC*, 526 F.3d 1379, 1381 (11th Cir. 2008) ("Forum selection clauses are interpreted according to ordinary contract principles ...."); *Edwards v. Costner*, 979 So.2d 757, 763 (Ala. 2007) ("In order for a person to be a third-party beneficiary of a contract, the contracting parties must have intended to bestow benefits on third parties.") (citation omitted). Simply put, then, Dongguan's reliance on the purchase order between Belkin and some other company to argue that Dongguan is entitled to a California forum for the Crossclaims is misleading and inaccurate.

would be unduly prejudicial to Dongguan as to the Cincinnati/Henderson claims. As movant puts it, "holding one trial for both the issues averred in Cincinnati's Complaint and Belkin's Cross-Complaint would undoubtedly confuse the jury and could easily lead to a biased jury if issues of insurance liability coverage were interjected into this lawsuit." (Doc. 46-2, at 7.) Dongguan cites Rules 21 and 42, and requests that the Crossclaims "be severed from this litigation" on that basis. (*Id.* at 6.) Belkin does not disagree with Dongguan's assessment that the Crossclaims should be separated from the Cincinnati/Henderson claims at trial; however, it asserts that ordering separate trials under Rule 42(b) would be a better, more efficacious, and more equitable solution than severing the Crossclaims altogether pursuant to Rule 21.

Rule 21, Fed.R.Civ.P., provides that a district court may "sever any claim against a party." *Id.* Rule 42, Fed.R.Civ.P., states in pertinent part that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." *Id.* Despite their similarities, Rules 21 and 42 each contemplate distinct relief. "If claims are severed pursuant to Rule 21 they become independent actions with separate judgments entered in each." *DirecTV, Inc. v. Leto*, 467 F.3d 842, 846 (3rd Cir. 2006) (citation omitted); *see also Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 441 (7th Cir. 2006) ("As a general matter, Rule 21 severance creates two discrete, independent actions, which then proceed as separate suits for the purpose of finality and appealability."); *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 558 (1st Cir. 2003) ("Rule 21 ... furnishes the mechanism for separating a case into separate actions"). By contrast, Rule 42(b) "affords a district court discretion to order separate trials where such order would further convenience, avoid prejudice, or promote efficiency." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1301 (11th Cir. 2001); *see also Gaffney*, 451 F.3d at 442 n.18 (Rule 42(b) order "does not result in the filing of separate cases" but instead "simply leads to two or more separate factual inquiries in the context of a single, properly joined case") (citation omitted); *Acevedo-Garcia*, 351 F.3d at 559 ("Rule 42(b) ... authorizes courts to divide a single action into separate trials that remain under the umbrella of the original solitary action").

It is well established that "[t]he determination of whether to grant a motion to sever is left to the discretion of the trial court." *Fisher v. Ciba Specialty Chemicals Corp.*, 245 F.R.D. 539, 541 (S.D. Ala. 2007); *see also M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) ("The

determination of a motion to sever is within the discretion of the trial court."). "Among the factors considered in exercising that discretion include whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the motion is granted or denied." *Fisher*, 245 F.R.D. at 541.

Although Dongguan is proceeding under both a Rule 21 severance theory and a Rule 42(b) separate-trials theory, its stated preference would be to have the Crossclaims severed from the Cincinnati/Henderson claims *in toto* and diverted into a separate lawsuit. However, Dongguan has failed to articulate any convincing explanation for why Rule 21 relief is more appropriate than Rule 42(b) relief in the specific context of this case.[9] More importantly, as this Court has stated in previous rulings, as the Magistrate Judge determined in the Report and Recommendation, and as this Court has reaffirmed here, the issues being litigated as to the Crossclaims are closely, logically related to those in the Cincinnati/ Henderson claims. The details of the fire are or may be highly relevant to both sets of claims. The relative culpability and affirmative acts of wrongdoing by Dongguan and Belkin are or may be highly relevant to both sets of claims. There are overlapping factual and legal issues in both claims. Simply put, the Crossclaims are not independent of the Cincinnati/Henderson claims. If, for example, the Cincinnati/Henderson claims are resolved in favor of defendants, then the dispute between Belkin and Dongguan as to whether the latter must indemnify the former becomes moot. Similarly, a finding that plaintiffs are entitled to damages from defendants as to the principal claims would shape the scope and amount of any possible liability of Dongguan as to the Crossclaims. The point is that, notwithstanding Dongguan's repeated efforts to cast the Crossclaims as a mere contractual dispute unrelated to Alabama or the September 3, 2005 fire at Martha Jane's Antique Shop in Mobile, Alabama, those Crossclaims are necessarily intertwined,

---

[9] The Court shares Belkin's intuition that Dongguan stood to benefit strategically with respect to the jurisdictional and venue arguments propounded in its Motion to Dismiss if the Crossclaims were severed from the principal claims before that Motion to Dismiss were taken under submission. In other words, Dongguan's personal jurisdiction and venue defenses might resonate more if those Crossclaims were not joined with claims for damages arising from the Alabama fire as to which Dongguan has not contested personal jurisdiction. It appears, then, that the Motion to Sever was a strategic precursor to bolster the ensuing Motion to Dismiss.

both legally and factually, with the underlying facts of the fire.  Accordingly, to subdivide this action into two different lawsuits, with two different trials, before two different juries, all proceeding independently of each other, would be grossly inefficient.  Rather than the Rule 21 severance remedy, "bifurcation under Rule 42(b) is appropriate where claims are factually interlinked, such that a separate trial may be appropriate, but final resolution of one claim affects the resolution of the other."  *Gaffney*, 451 F.3d at 442.  Such is the case here.

In light of the foregoing, the Motion to Sever is **denied** insofar as Dongguan seeks to have the Crossclaims severed from the Cincinnati/Henderson claims under Rule 21.  These claims bear substantial overlap and should be litigated and tried in a single action, and resolved via a single judgment.  That said, the Court understands and concurs with Dongguan's concern that the introduction of evidence concerning its liability insurance coverage as to the Crossclaims could prejudice Dongguan as to the Cincinnati/Henderson claims.  To avoid that risk of prejudice, and the attendant risk of jury confusion that may result from trying issues of liability and indemnity together, the Court agrees that bifurcation under Rule 42(b) is an appropriate and suitable procedure.  Accordingly, the Motion to Sever is **granted** insofar as Dongguan seeks a separate trial on the Crossclaims under Rule 42(b).

### IV.  Conclusion.

For all of these reasons, it is hereby **ordered** as follows:

1. The Report and Recommendation (doc. 74) is **adopted** and defendant Dongguan's Objections (doc. 79) to same are **overruled**.  The Motion to Dismiss (doc. 52) and Amended Motion to Dismiss/Transfer (doc. 63) are **denied**.

2. The Motion to Sever (doc. 46) is **granted in part, and denied in part**.  The Motion is **granted** insofar as Dongguan seeks to have separate trials for the Crossclaims and for the claims set forth in the Complaint.  The trial of this action will be **bifurcated**, with the Cincinnati/Henderson claims set forth in the Complaint tried first.  The details of that bifurcation process will be finalized at the Final Pretrial Conference before the undersigned in April 2009.  (*See* doc. 32.)  In all other respects, particularly the request for severance pursuant to Rule 21, the Motion to Sever is **denied**.

DONE and ORDERED this 13th day of November, 2008.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE